EDWIN A. LOMBARD, Judge.
CThe defendant/appellant, Cynthia Haynes, seeks review by devolutive appeal of the judgment in favor of plaintiff/appel-lee, Housing Authority of New Orleans (HANO), evicting her from her apartment at 1301 Simon Bolivar, Apartment 1227. After review of the record in light of the applicable law and arguments of the parties, we find that the evidence does not support the judgment granting HANO’s rule for possession and, accordingly, the judgment is reversed.

Relevant Facts and Procedural History

Ms. Haynes’ daughter, Nicole, was arrested at her mother’s apartment on March 31, 2014, shortly after signing in on the visitor log of the housing complex. On July 1, 2014, Ms. Haynes was notified[1] by letter dated June 27, 2014, under the letterhead of Robert Jenkins, attorney at law, and signed by Mr. Jenkins, stating that she must deliver possession of her apartment which she occupied “as Guste Homes Resident Management Corporation’s (GHRMC) tenant” by July 4, 2014, at 4 p.m. The letter stated that the eviction was based on Ms. Haynes’ violation of two provisions of her lease agreement, paragraphs IX(A)(4) and XIV(10)(C), which provided:
12Resident shall be obligated to: not to harbor and/or provide shelter to persons previously evicted for One Strike Violations, to persons fleeing arrests, prosecution and/or confinement for violation of applicable State and Federal laws. If a member of the household is: harboring or providing shelter to a previous Resident evicted for a One Strike violation, and / or for anyone fleeing from arrest, prosecution, and / or confinement.
The notification letter further stated that:
According to Guste Homes Resident Management Security Incident [sic], on March 31, 2014, around 7:15 p.m. Ms. Nicole Hayes [sic] entered the Guste Homes building and went to apartment 1227 where her mother (Cynthia Hayes [sic]) lives. Lieutenant Allen along with Officer Pollard and another officer went to the 12th floor. Lt. Alen knocked on apartment 1227 and asked Ms. Nicole to step out into the hallway. Ms. Nicole complied and stepped into the hallway. Ms. Nicole was then place under arrest and taken out of the building around 7:49pm. Ms. Nicole was wanted by U.S. Marshals for aggravated battery by stabbing.
Finally, the letter informed Ms. Haynes that under HANO’s[2] One Strike Policy, 24 *93 C.F.R. 902.43(a)(5), she was “not entitled to a grievance hearing to dispute management’s decision to terminate” the lease agreement “due to the criminal nature of the violation.”
On July 7, 2014, counsel for Ms. Haynes sent a request for a grievance hearing on behalf of her client, pointing out that Ms. Haynes had not engaged in [.-¡criminal activity under the provisions of the One Strike provisions of the lease and that her daughter’s arrest alone did not create a presumption of criminal activity.
On July 14, 2014, a Rule for Possession was filed in First City Court against Ms. Haynes. The application was filed by “W. Hollins for Guste/HANO” (street address: 1301 Simon Bolivar); the plaintiff was listed as “Guste/HANO;” the reason indicated for eviction was violation of lease agreement “Harboring Fugitive in Apartment.” The court issued an Order to Show Cause on July 14, under the case name “Housing Authority of New Orleans vs Cynthia Haynes,” setting the hearing date for July 31, 2014. Notably, although the order to show cause indicates that the “owner hereby attaches a copy of said written lease as Exhibit 1,” no lease appears as an exhibit in the record before this court. The “owner/attorney/agent” listed on the order to show cause is “Guste Homes Resident Management Corporation.” The reason listed for the rule for possession was: “specific violation of lease more particularly HEARING [sic] FUGITIVE IN APARTMENTS.”
On July 30, 2014, an answer was filed on behalf of Ms. Haynes pleading exceptions of insufficiency of citation, no right of action, and prematurity, in addition to pointing out that Ms. Haynes’ actions did not constitute harboring a fugitive. With regard to the exception of insufficiency of citation, counsel pointed out that Ms. Haynes’ lease specifically provided that she had the right to examine documents relevant to an eviction but no such documents had been provided. With regard to the exception of no right of action, counsel pointed out that the burden |4was on the plaintiff (HANO) to show that a lease existed between the plaintiff and defendant, but in this case Ms. Haynes had not signed a lease with HANO, rather she had “signed a lease with Guste Homes RMC, referred to in the lease as the ‘Housing Owner of New Orleans.’ ” A copy of the lease agreement signed by Ms. Haynes was attached as an exhibit to Ms. Haynes’ answer.
At the hearing on July 31, 2014, counsel for HANO related the basis for Ms. Haynes’ eviction:
The NOPD contacted Guste Homes security and said that they believe she [Nicole Haynes] would possibly show up at that site. They asked Guste Homes security not to approach her, not to try to apprehend her, not to do anything, but if that they [sic] saw her or she check in, to contact them and let them know. And that’s why the time is so relevantly [sic] short. Police were contacted. NOPD was contacted. NOPD *94 showed up. They went to the apartment with Guste Homes security. They knocked on the door, asked her to step out. She stepped out and she was arrested. (Emphasis added).
Counsel for HANO further asserted that Nicole Haynes was “wanted by the Mar-shalls” for “allegedly stabbing a family member in the leg with a knife during an altercation” in St. Charles Parish. Notably, HANO introduced no documents or witness testimony into the record to support this assertion.
In response to questioning by the judge, Ms. Haynes stated she was unaware of an altercation between her daughter and brother (the apparent victim of a stabbing) until after Nicole was arrested at her apartment. Counsel for Ms. Haynes pointed out that another family member had been arrested for stabbing Ms. Haynes’ brother, leaving Ms. Haynes with no reason to believe her daughter would be charged in the incident. In response, counsel for HANO argued that [cjriminal activity is cause for eviction even in the absence of conviction or arrest. At this Ispoint in the proceedings, the judge continued the hearing, pointing out that “She’s getting you on the provision of these documents, so I’m going to order you to give her the documents.”
On August 5, 2014, counsel for Ms. Haynes filed an amended answer and exceptions to HANO’s rule for possession. Once again, the exception of no right of action was included, pointing out that because Ms. Haynes had not signed a lease with HANO, HANO had no right to bring this action. In addition, Ms. Haynes’ amended answer pointed out that the alleged violation did not fall under the “One Strike Policy” because that policy exempts only “criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises of other residents, or any drug related criminal activity on and off the premises” from the grievance process and there was no showing that Ms. Haynes’s actions threatened the health, safety, or right of peaceful enjoyment of the residents of Guste Homes or was a drug-related criminal activity on or off the premises as required by 42 U.S.C 1437d(l)(6); 24 C.F.R. § 966.4(f)(12) (2006).
A copy of the lease agreement between Ms. Haynes and “Housing Owner of New Orleans (THE MANAGER)” and a copy of the GHRMC security incident/accident report filed by security officer Darrel Allen were attached as an exhibit to Ms. Haynes’ amended answer. The report indicates that the incident (characterized as “supsect. [sic] wanted”), occurred on “3-31-14 7:15 p.m. and the report was filed on “3-13-14 [sic] 7:25 p.m.” The incident report further listed | ^Nicole Haynes as the “accused/perpetrator” with no stated address. According to the incident summary:
On Monday March 31, 2014 around 7:15 p.m. Ms. Nicole Haynes enter [sic] the Guste Homes building and went to Apartment 1227 where her mother (Cynthia Haynes) live [sic]. I, Lieutenant Allen, along with Officer Pollard and Another Officer went to the 12th floor, and security officer Green and another police officer went to the 10th floor. I knocked on 1227 door, asked Ms. Nicole to step out in the hallway she did and the police place [sic] her under arrest. Ms. Nicole was taken out of the building around 7:49 pm.
When the hearing reconvened on August 6, 2014, the judge announced that the exceptions filed on behalf of Ms. Haynes would be addressed first. The judge denied Ms. Haynes’ exception of insufficiency of citation, stating We’re going to go forward with the hearing today for the One Strike. Accordingly, counsel for HANO *95 announced they were prepared to go forward with the testimony of Mary Wilson, property manager of Guste Homes, and Lieutenant Allen, security guard of Guste Homes.
The trial judge did not rule upon Ms. Haynes’ exception of no right of action and, accordingly, her counsel stated “for the record” opposition to going forward because “they were on notice they bear the burden of proof by preponderance of the evidence.”
HANO first presented the testimony of Mary Wilson, property manager of Guste Homes. Notably, Ms. Wilson was identified only as the “property manager” without explanation of her credentials to manage federally funded public housing or interpret federal regulations pertaining to public housing such as the “One Strike” policy. In her testimony Ms. Wilson identified a copy of a residential lease 17agreement, a “resident’s visitor’s log” for the Guste Home High Rise, and a document referred to as “The Housing Authority of New Orleans’ One Strike policy.’’ None of these documents were submitted into evidence or appear in the record. Moreover, there is nothing in Ms. Wilson’s testimony relating to the residential lease agreement signed by Ms. Haynes, the entity Guste Homes, the relationship of Guste Homes to HANO, or to Guste Homes as public housing regulated by federal regulations.
Rather, Ms. Wilson testified that the visitor log of Guste Homes indicates that Nicole Haynes “signed in on March 31st, 2014, to visit Apartment 1227.” When Ms. Wilson was asked to identify a “St. Charles Parish Sheriffs Office News Release,” counsel for Ms. Haynes objected, noting that Ms. Wilson “has not authenticated it and she’s not in a position to authenticate it.” The judge agreed, stating “See if you can get it another way.” Counsel for HANO responded “this is a hearing under the One Strike rule, which would be a little bit more laid back than a traditional trial, and we would ask that the Court have just a little leniency on some of our documents.” The judge apparently agreed because Ms. Wilson then described the document handed to her:
It says wanted by the U.S. Marshall. Name is Nicole Haynes. It gives her sex, race, height, weight, eyes. And subject to that, she had — subject to warrant from St. Charles, an aggravated battery and stabbing, and has a hold on it.
Ms. Wilson then explained “how these documents” led her to “the conclusion to evict Ms. Haynes: “Her daughter was inside her unit. She was wanted.”
IsWhen asked to elaborate, Ms. Wilson stated:
According to the sign-in sheet when Ms. Haynes’s daughter went to her apartment, 1227, there was a warrant issued for her daughter’s arrest and Ms. Haynes was harboring a fugitive. They had a warrant out for her arrest and she was harboring a fugitive in her unit.
Counsel for Ms. Haynes objected again, noting that no warrant had been authenticated on the record or entered into evidence and Ms. Wilson neither saw nor claimed to have seen a warrant. The following colloquy occurred:
THE COURT: Well, he hasn’t asked her that. Maybe he’s going to ask her that now.
[HANO COUNSEL]: Did you at any time see a warrant or did you use the incident report?
MS. WILSON: No. I used the incident report.
[HANO COUNSEL]: Okay. And after reading the incident report, did you as *96 certain enough information to follow through with an eviction?
MS. WILSON: According to the — yes, yes, we did.
[HANO COUNSEL]: And did you use the One Strike policy?
MS. WILSON: Yes.
[HANO COUNSEL]: And after using the One Strike policy, does HANO’s lease state that it gives you guys the power and authority to be able to go forward with an eviction?
MS. WILSON: Yes, it does.
[HANO COUNSEL]: Did you follow all the steps in proceeding to this eviction?
MS. WILSON: Yes.
[[Image here]]
MS. WILSON: We contacted our attorney. She was issued a Notice to Vacate and the notice stated the reason for the vacate [sic] on the lease or termination procedures for One Strike.
[[Image here]]
|flMS. WILSON: Under the lease, according to the paperwork from the police report that we have and under the lease on page 9, number 10, “If a member of the household is fleeing to avoid prosecution or fleeing from an arrest or custody, or confinement, it’s a violation of the lease under termination — on termination.” And Part C says, “Harboring or providing shelter to a previous Resident evicted for a One Strike violation — for a One Strike violation and/or anyone fleeing from arrest, prosecution and/or confinement.
On cross-examination, counsel for Ms. Haynes reviewed the major points of the One Strike policy with Ms. Wilson and then the following colloquy took place:
[COUNSEL FOR MS. HAYNES]: So, Ms. Wilson, is Nicole Haynes a resident of Guste Homes?
MS. WILSON: No.
[COUNSEL FOR MS. HAYNES]: And is she a household member, meaning is she on the lease at Guste Homes?
MS. WILSON: No.
[COUNSEL FOR MS. HAYNES]: And has she been previously evicted under the One Strike policy from a HANO property, to your knowledge?
MS. WILSON: No.
[[Image here]]
[COUNSEL FOR MS. HAYNES]: Okay. And you also confirm that she is not a resident or a household member, correct — Ms. Nicole Haynes?
MS. WILSON: Yes.
[COUNSEL FOR MS. HAYNES]: And at the time of the arrest, do you know if she was convicted of the crime she was being arrested for?
MS. WILSON: I don’t know.
Finally, counsel of Ms. Haynes reviewed the visitor log with Ms. Wilson and Ms. Wilson agreed that there were a number of entries indicating that Nicole Haynes visited her mother regularly.
ImOn redirect, after reviewing the One Strike policy provision pertaining to eviction for criminal activity, the following colloquy took place:
[HANO COUNSEL]: Ms. Wilson, would Ms. Haynes be responsible for her daughter when her daughter comes to see her?
MS. WILSON: Yes.
[HANO COUNSEL]: And, Ms. Wilson, will HANO evict a family member by judicial action like we are today for any criminal activity?
MS. WILSON: Yes.
[HANO COUNSEL]: And will they evict a family — will they evict a resident for criminal activity, regardless of *97 whether the person has been arrested or convicted?
MS. WILSON: Yes.
[HANO COUNSEL]: So, what you’re saying is criminal activity is cause for eviction?
MS. WILSON: Yes, it is.
When questioned by the judge, Ms. Wilson reiterated that the only information underlying her decision to evict Ms. Haynes was the security incident report. In response to the judge’s question as to whether she went through the visitor’s log randomly or screened every person, .Ms. Wilson said that “Security can answer more to that” because she did not “work that desk that often.”
HANO next presented the testimony of Lieutenant Allen who identified himself as the supervisor of security at Guste Homes and author of the security incident report relating to Ms. Haynes. Lieutenant Allen also identified a notice from the St. Charles Sheriffs Office “that was left with the security department with instruction on what to do if we saw Ms. Nicole Haynes,” as well as the visitor log indicating that Nicole Haynes visited her mother on March 31, 2014, at 7:15 p.m. This colloquy followed:
[ UMR. ALLEN: Okay, Our security department works along with NOPD and that’s how we got the flyer stating what to do if we saw Ms. Nicole, you know, come into the building.
[HANO COUNSEL]: Okay, That was the 30th?
MR. ALLEN: Right.
[HANO COUNSEL]: Can you tell the Court what happened on the 31st?
MR. ALLEN: Okay. On the 31st, Ms. Nicole came to the building for a second time. The first time, which was on the 30th, she came to the building, but New Orleans Police was out of place, so she was not apprehended that night, but she returned the second night, which was the 31st, and everybody was in place and that’s when she was apprehended.
[HANO COUNSEL]: When you say everybody was in place, can you explain to the Court who are you speaking of when you say “in place”?
MR. ALLEN: Okay. We were instrhct-ed to — well, security department was instructed if we saw—
[HANO COUNSEL]: Instructed by?
MR. ALLEN: By New Orleans Police Department. If we saw her, do not try to, you know, hinder her from going to visit. Just let her sign in as she normally do [sic] and call the — you know, call them, immediately, and that’s what we did.
[HANO COUNSEL]: And can you tell the Court what happened after NOPD got to the premises?
MR. ALLEN: Okay. When they came, we told them there was two places that we know that she goes to visit, on the 10th floor and 12th floor. So we divide into two teams. One security officer went with one NOPD to the 10th floor and I went with the other one to the 12th floor. And when we got to the 12th floor, I knocked on the door, and Ms. Cynthis Haynes, she answered. And I asked her was Nicole there. She said yeah. And I asked her-would she ask her to step outside into the hallway, and she did. And Ms. Nicole came in the hallway and that’s when she was apprehended by NOPD.
Lieutenant Allen next identified the incident report he authored. On cross-examination, he related that he had worked security at Guste Homes for fafour years and in the time period Nicole Haynes visited “at least twice a week.” He related that she was registered on the visitation *98 cards of two residents (her mother and a resident on the 10th floor), thereby allowing her access by floor pass once she signed into the visitor’s log. In response to the judge’s question, Lieutenant Allen conceded he did not know the basis for the NOPD request that they (the NOPD) be informed when Nicole Haynes arrived to visit.
In closing arguments, counsel for HANO asserted that the Rule for Possession evicting Ms. Haynes should be granted because Ms. Haynes violated the section of the lease prohibiting “harboring or providing shelter to a previous resident evicted for One Strike violation and/or anyone fleeing from arrest, prosecution, and/or confinement.” Counsel reiterated Ms. Haynes should be evicted for breach of lease “because she incurred the obligations when she signed the lease — not to harbor and/or provide shelter to persons previously evicted for One Strike violations to persons fleeing from arrest, prosecution and/or confinement for violation of applicable State and Federal laws.”
In response, counsel for Ms. Haynes pointed out that while a landlord could evict for criminal activity that threatened the health, safety or right to peaceful enjoyment of residents of the premises, the landlord had the burden of proving by a preponderance of the evidence that the criminal activity occurred. More specifically, counsel pointed out that, although an arrest, or conviction was not necessary, it was necessary to show all the elements of the crime alleged which, in the case of harboring a fugitive requires a showing that there was a warrant for the person in question’s arrest, that the alleged harborer had knowledge of that warrant, that the | ^alleged harborer had intent to harbor or conceal that person, and that the harborer took an overt act to conceal the individual. Counsel then observed that none of these elements had been shown and, in fact, Nicole’s signing the visitor’s log and Ms. Haynes’s immediate acknowledgment that her daughter was there when the police arrived to arrest her showed that neither Ms. Haynes nor her daughter were trying to conceal her daughter’s visit.
The trial judge disagreed, however, stating:
... I don’t want to interrupt your closing, but the application for rule of possession of premises, they don’t say threatening behavior of a witness. They say harboring fugitive in apartment, and I think they’ve shown that she was wanted, so I don’t know where your — I mean, I don’t want to interrupt you, but I don’t know where you’re going with your argument, because it says harboring fugitive in the apartment, and I believe they show that she’s wanted. That’s a fugitive, right?
* ⅜ *
But how do you overcome the provision in One Strike that talks about a member of the household, a guest, and that she’s wanted; how do you overcome that?
Counsel for Ms. Haynes suggested to the judge that “it might be helpful just to look exactly at the language of the One Strike,” but the trial judge informed counsel that she no longer had the copy of the One Strike policy provision provided by counsel because “[sjomebody used it.” The judge then called for a sidebar and went off the record. Back on the record, counsel for Ms. • Haynes reiterated that HANO had not shown the elements of harboring a fugitive by a preponderance of the evidence.
114Before ruling, the judge stated that it was her understanding that HANO had given Ms. Haynes an opportunity to move by consent and, if she did so, she could *99 “take her voucher” with her and move to another unit. Counsel for Ms. Haynes explained, however, that Ms. Haynes, a public housing resident, did not have a Section 8 voucher and “if she moves out of Guste, even if by consent, she does not have a voucher that she can take elsewhere.” The trial judge asked “[w]ill you show that in writing to me?” Although HANO had been represented throughout' the court proceedings by “Mr. Villavaso,” the transcript indicates that “Mr. Jenkins” responded to the judge’s question, stating “I’ll do that, Judge, but if she would do the consent, we would give her the additional seven days or whatever.” Notably, Mr. Jenkins only prior participation in this case was the issuance of the original eviction letter under his own letterhead on behalf of “Guste Homes Apartments.”
After a brief recess, the trial judge returned and made the following ruling:
In conjunction with the testimony today by the manager of Guste Homes and the Lieutenant that testified today and a reading of the One Strike policy provided by the plaintiff today, the court finds that the Housing Authority of New Orleans has fulfilled all requirements for the One Strike policy and we’re going to evict Ms. Haynes on today. 24-hour Rule Absolute.
That same day (On August 6, 2014), a written order was issued stating “considering the law and evidence to be in favor of plaintiff-in-rule and against defendant-in-rule, for reasons orally assigned,” judgment was entered in favor.of HANO and against Ms. Haynes “condemning said defendants [sic] to vacate premises No. 1301 Simon Bolivar # 1227 New Orleans LA 70113 ... within twenty-four hours and pay all cost of proceedings.” A motion for suspensive appeal was granted “conditioned |1Bupon [Ms. Haynes] furnishing security by depositing in the registry of the court a payment of $2000.00.” Subsequently, because the appeal bond was “nearly three times the monthly income,” the suspensive appeal was waived and Ms. Haynes’ motion for devolutive appeal was granted on August 13, 2014.

Standard of Review

The standard of review is clearly wrong/manifestly erroneous. Estates of New Orleans v. McCoy, 14-0933, p. 2 (La.App. 4 Cir. 3/18/15), 162 So.3d 1179, 1181. “A judgment of eviction must be reversed when the lessor fails to prove the legal ground upon which the lessee should be evicted.” Housing Authority of New Orleans v. King, 12-1372, p. 4 (La.App. 4 Cir. 6/12/13), 119 So.3d 839, 842 (citations omitted).

Applicable Law

The Federal Housing Act is intended to assist state and local governments in providing affordable housing to low income families. See Pub.L. No. 75-412, 50 Stat. 888 (1937); 42 U.S.C. § 1437(a); Punishing the Innocent: No Fault Eviction of Public Housing Tenants for the Actions of Third Parties, 76 Tex. L.Rev. 1495, 1498 (1998). Under the Act, responsibility for managing, maintaining, and operating public housing developments is vested in local public housing agencies, such as HANO, rather than the federal government. See 42 U.S.C. § 1437(a)(1)(c).
To obtain federal funding, local public housing agencies must agree to abide by federal law and by federal regulations promulgated by the Department of Housing and Urban Development (“HUD”). See generally 42 U.S.C. § 1437g. Therefore, the standard for eviction in a public housing project receiving federal funding is a matter of federal, not state, law. See City of South San Francisco Housing Authority v. Guillory, 49 *100 Cal.Rptr.2d 367, 371, 41 Cal.App.4th Supp. 13, 19 (1995). In 1990, concerned with the prevalence of crime in public housing developments, Congress passed the Cran-ston-Gonzalez National Affordable Housing Act of 1990 requiring the inclusion in all public housing agency leases the provision warning tenants that, “any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a public housing tenant, any member of the tenant’s household, or any guest or other person under the tenant’s control, shall be cause for termination of tenancy.” 42 U.S.C. § 1437d(i)(6). The scope of this statute was broadened further by a 1996 amendment which replaced the phrase “on or near.such premises,” with the phrase “on or off such premises.” See Pub.L. 104-120 § 9(a)(1). 110 Stat 834; 42 U.S.C. § 1437d(i )(6). To implement this statutory mandate, HUD promulgated regulations requiring public housing authorities to include a provision in their leases warning that the tenant was obligated to assure that no member of their household, guest or person under their control[3] engage in drug-related criminal activity on or near the premises and such criminal activity was cause for termination and eviction from their public housing unit. Currently, the regulations provide that any drug-related criminal activity on or off the premises “by the tenant, any member of the household, a guest, or another person under the tenant’s control, shall be cause for termination of tenancy.” 24 C.F.R. § 966.4(1 )(5)(i)(B).
Consistent with these regulations, the “One Strike and You’re Out” policy was formulated in 1996 by the Clinton administration to encourage local public | ^housing authorities to take full advantage of federal statutes promulgated to promote community safety in public housing. See 76 Tex.L.Rev. at 1503. Thus, under the Code of Federal Regulations a public housing tenant must assure that “no tenant, member of the tenant’s household, or guest” engage in “[a]ny criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents.... ” 24 C.F.R. § 966.4(f)(12)(i)(A). Accordingly, under the applicable federal regulation, a lease agreement involving low-income housing must provide that an “expedited grievance” procedure is allowed in cases “concerning an eviction or termination of tenancy” only when the eviction or termination “involves any activity that threatens the health, safety, or right to peaceful enjoyment of the premises of other tenants or employees of the public housing agency or any violent or drug-related criminal activity on or off such premises, or any activity resulting in a felony conviction.” 42 U.S.C. § 1437d(k) (administrative grievance procedure regulations); see also 42 U.S.C. § 1437d(i )(4)(A)(i) and 42 U.S.C. § 1437d(4)(A)(ii).

Discussion

We first observe that, as counsel for Ms. Haynes correctly pointed out to the trial judge and again to this court on appeal, HANO not only failed to prove the existence of a lease between Ms. Haynes and HANO, but also failed to prove that a violation of the lease occurred. In its brief on appeal, HANO asserts that the lease *101 attached to Ms. Haynes’ amended answer to HANO’s rule for possession should be “deemed an admission” because “[t]he lease is between the owner, Housing Authority of New Orleans, and Cynthia Haynes.” This assertion is incorrect. First, we are a court of record and the burden was on HANO to show a violation of the |lslease agreement (and, thus, an existence of a lease between the parties) in the court below. See La.Code Civ. Proc. art. 3658 (to maintain possessory action, possessor must allege and prove possession or real right therein at time disturbance of the possession occurred); see also Durden v. Durden, 14-1154, p. 10 (La.App. 4 Cir. 4/29/15), 165 So.3d 1131, 1146 (in eviction proceeding, petition is required to make prima facie showing of title to property). Moreover, the lease agreement attached to Ms. Haynes’ amended answer clearly indicates throughout that it is a contract between Ms. Haynes and “Housing Owner of New Orleans (THE MANAGER).” Mary L. Wilson signed the lease agreement as “SITE MANAGER” and the initials “MW” appear on each page at the place designated as “STAFF INIT.” There is no indication in the lease agreement that Ms. Wilson. represents either HANO or Guste Homes/GHRMC, nor is there any indication that HANO or Guste Homes/GHRMC is a party to the lease. In addition, Ms. Wilson only testified that she was a “property manager” at “Guste Homes;” she gave no indication that she was employed or associated with HANO in any manner. Further, there is no explanation in the pleadings or record that states or explains the connection between HANO and Guste Homes/GHRMC.[4] As previously noted, the lease agreement is “between the Housing Owner of New Orleans” and Ms. Haynes; it is signed by Mary Wilson who subsequently appeared at the hearing identifying herself as the property manager of Guste Homes. The initial 5-day notice to vacate is issued by Robert Jenkins, attorney at law, and indicates that “Guste Homes Apartments’ is the Landlord/Complex.” The letter references HUD ^regulations, “HANO’s ‘One Strike’ Policy,” as well as citation to the Code of Federal Regulations, but never relates any connection between the lessor indicated on Ms. Haynes’ lease, the “Housing Owner of New Orleans (THE MANAGER),” and Guste Homes or HANO. The First City Court Evictions Division sheet setting the trial date for July 31,2014 indicates the case title is “GUSTE/HANO versus CYNTHIA HAYNES.” The notice for the rule of possession served on Ms. Haynes indicates the title of the case is “Housing Authority of New Orleans vs. Cynthia Haynes” and that Ms. Haynes is being served on motion by “Housing Authority of New Orleans.” The plaintiff (HANO) was represented at the hearing by Mary Wilson, property manager of Guste Homes. The judgment entered on August 6, 2014, is in favor of “Housing Authority of New Orleans.” Although there appears to be a general assumption that Guste Homes is an entity of or associated with HANO, there is nothing in the record before us to support such an assumption. Clearly, the trial judge erred by ignoring the exception of no right of action filed on behalf of Ms. Haynes.
Because further delay in this matter is detrimental to the now homeless defendant *102 and, as pointed out in Ms. Haynes’s appellate brief, Guste Homes appears to be a public housing development subject to federal and state laws applicable to public housing regulations and policies, see Guste Homes Resident Mgmt. Corp. v. Thomas, 12-1493, p. 1-2 (La.App. 4 Cir. 5/29/13), 116 So.3d 987, 988, in the interest of judicial efficiency and fairness to the defendant we consider the substantive issue in this appeal.
lanBecause HANO failed to meet its burden in proving a violation of the lease agreement, the judgment granting HANO’s Rule for Possession is clearly erroneous. The attempt by HANO on appeal to change the basis for eviction is egregious.
In the initial “5 Day Notice to Vacate Premises,” Ms. Haynes was informed that “[t]he eviction is for a criminal activity that threatens health and safety of residents,” citing lease provisions “IX(a)(4) and XIV(10)(C).” The lease attached as an exhibit to Ms. Haynes’ amended answer indicates that “IX(a)(4)” provides in pertinent part: “Resident shall be obligated ... [n]ot to harbor and/or provide shelter ... to persons fleeing arrests, prosecutions and/or confinement for violations of applicable State and Federal laws.” In turn, “XIV(10)(C)” warns that the “Lease may be terminated for serious or repeated violations of the lease” including but not limited to “[i]f a member of the household is ... [h]arboring or providing shelter to a previous Resident evicted for a One Strike violation and/or for anyone fleeing from arrest, prosecution, and /or confinement.”
A simple review of the dictionary definitions of the verbs “harbor” and “shelter” clearly reveals the trial judge’s error in concluding that HANO successfully supported their rule for possession on the basis of “harboring fugitive in apartment” because “they’ve shown that she was wanted.” A “fugitive” is a “person who flees or escapes; a refugee” or, alternatively, a “criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or by hiding.” Black’s Law Dictionary, 8th ed. (West 2004), pp. 69495 (citing 18 U.S.C. § 1073). To “flee” or “fleeing” requires some indication or “an act” of flight or evasion. See Black’s Law Dictionary, 8th ed. (West 2004), p. |⅞1670; see also New Webster’s Dictionary and Thesaurus (Lexicon 1992) p. 359 (“flee” defined as “to run away”). In turn, harboring is the “act of affording lodging, shelter, or refuge to a person, esp. a criminal or illegal alien.” Black’s Law Dictionary, 8th ed. (West 2004), p. 1409. A shelter is a “place of refuge providing safety from danger, attack, or observation.” Black’s Law Dictionary, 8th ed. (West 2004), p. 694-95. To “lodge” is to “live in someone else’s house, paying for accommodation.” New Webster’s Dictionary and Thesaurus (Lexicon 1992) p. 582. Finally, a “refuge” is a place “offering shelter or protection from danger, distress or difficulty.” New Webster’s Dictionary and Thesaurus (Lexicon 1992) p. 838.
Similarly, the federal statute pertinent to harboring a fugitive, entitled “Concealing person from arrest,” provides: “Whosoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provision of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined under this title or imprisoned for not more than one year, or both....” 18 U.S.C. § 1071. Related jurisprudence indicates the elements of harboring a fugitive in violation of this statute are: (1) the defendant knew about *103 the warrant issued for the fugitive’s arrest; (2) the defendant engaged in physical acts that aided the fugitive in avoiding detection and apprehension; and (3) the defendant intended to prevent the fugitive’s discovery. U.S. v. Zerba, 21 F.3d 250, 252 (8th Cir.1994); see also U.S. v. Lockhart, 956 F.2d 1418, 1423 (7th Cir.1992); U.S. v. Stacey, 896 F.2d 75, 77 (5th Cir.1990) (affirmative physical action required to establish harboring or concealing within meaning of § 1071); U.S. v. Foy, 416 F.2d 940, 941 (7th Cir.1969) (harbor and |22conceal are “active verbs” and must be “construed narrowly, not to include all terms of assistance”).
The record evidence shows that Nicole Haynes openly signed into the visitor’s log to visit her mother. Moreover, when the security guard (accompanied by the NOPD) knocked on Ms. Haynes door and asked for Nicole, Mrs. Haynes’ daughter immediately came to the door and was arrested without incident and without interference by her mother. Nothing in their actions indicate that Ms. Haynes or Nicole knew of a warrant for Nicole’s arrest or that Ms. Haynes took any action to shelter, protect, or aid her daughter in evading arrest. Contrary to Ms. Wilson’s and the trial judge’s interpretation, the mere presence of Nicole as a visitor in her mother’s apartment after openly signing in on the visitor’s log does not constitute “harboring a fugitive” on the part of Ms. Haynes.
In arguing for the first time on appeal that Ms. Haynes’ eviction should be upheld because Ms. Haynes was an “accessory after the fact” in violation of La.Rev.Stat. 14:25 and therefore a criminal in her own right, HANO apparently concedes that an eviction for “harboring a fugitive” is unsupportable.. This argument, based on Ms. Haynes concession that she learned of the incident involving her brother only after her daughter’s arrest, is absurd. The statutory definition of “an accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe he has committed the felony and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.” ■ La.Rev.Stat. 14:25. Clearly, the facts in this record do not support such a charge which requires knowledge, intent, and an overt act. Lieutenant Allen specifically testified that the flyer instructing him to call the NOPD when Nicole Haynes signed in on |Mthe visitor’s log to visit her mother also specifically warned that neither Ms. Haynes nor her daughter were to be notified or approached in any manner. In addition, Ms. Haynes specifically stated she did not know of the incident until after Nicole’s arrest. The flyer was not submitted into evidence and there is no evidence in the record of an actual warrant or that Nicole was aware of the warrant. Although Nicole was apparently arrested by the NOPD, the alleged crime does' not appear to have taken place in New Orleans[5] and there is no evidence that Nicole was charged, prosecuted, or convicted of any crime. Thus, there is no evidence that Ms. Haynes knew of the alleged charges prior to the arrest or, under any definition of the words, sought to harbor, conceal, ■ or aid her daughter.
Finally, HANO’s argument that the nature of Nicole Haynes’s alleged crime is a sufficient basis for Ms. Haynes’s eviction because it was “a threat per se to the health, safety, and right to peaceful enjoyment of the premises by other tenants and Guste Homes staff” is inapt. The incident report shows that Nicole Haynes signed in to visit her mother at 7:15, and was arrest *104 ed ten minutes later without incident. There is no evidence that any of the other residents were even aware of the arrest, much less that their “peace” was disturbed by the arrest. Lieutenant Allen testified that Nicole visited Guste Homes several times a week for four years and there is no evidence that her presence as a visitor in anyway disturbed the residents of Guste Homes.
More importantly, there was no notice to Ms. Haynes prior to the hearing or in the proceedings below suggesting that her eviction was based upon her daughter’s alleged, but unconfirmed, criminal- conduct in another parish. Although the “One Strike” policy, instituted in the midst of the so-called “War on Drugs,”’ |¡^allows expedited evictions of tenants involved in the drug trade or disturbing criminal activity, it does not eliminate all due process. Notice of the charges or, in this case, notice of the basis for eviction from public housing, is the most basic of due process protections. Public housing was designed and implemented to aid the most vulnerable members of our society. Thus, contrary to the suggestion by HANO’s attorney at the hearing that the trial judge should be “lenient” with the procedural requirements in an expedited eviction process, procedural protections must be strictly adhered to prior to an eviction to protect the rights of, as in this case, a tenant innocent of lease violations.
The trial judge’s conclusion that because Nicole was “wanted,” she was a fugitive and, therefore, her presence in her mother’s apartment was a sufficient basis to evict her mother is clearly wrong. The apparent absence of oversight by HANO in allowing a property manager to interpret federal regulations and policy, particularly when that interpretation is contrary to applicable jurisprudence or even basic dictionary definitions of basic words, is troubling; the trial judge’s failure to independently research or assess the pertinent statutory and regulatory language is appalling.

Conclusion

Accordingly, the judgment of the trial court is reversed.
REVERSED.

. The letter was addressed to "Cynthia Hayes” and refers to her as such throughout the letter.

. At no point in the pleadings or record do we find an explanation of the connection between HANO and Guste Homes/GHRMC. The lease agreement is "between the Housing Owner of New Orleans” and Ms. Haynes; it is signed by Mary Wilson who subsequently appeared at the hearing identifying herself only as the property manager of Guste Homes. The initial 5-day notice to vacate is issued by Robert Jenkins, attorney at law, and indicates that “Guste Homes Apartments” is the "Landlord/Complex.” The letter references HUD regulations, "HANO’s ‘One Strike’ Policy,” as well as citation to the Code of Federal Regulations. The First City Court Evictions Division sheet setting the trial date for 7-31-2014 indicates the case title is "GUSTE/HANO versus *93 CYNTHIA HAYNES.” The notice for the rule for possession served on Ms. Haynes indicates the title of the case is "Housing Authority of New Orleans vs. Cynthia Haynes” and that Ms. Haynes is being served on motion by "Housing Authority of New Orleans.” The plaintiff was represented at the hearing by Mary Wilson, property manager of Guste Homes. The judgment entered on August 6, 2014, is in favor of “Housing Authority of New Orleans.” Although it may be assumed that Guste Homes is some entity of or associated with HANO, we are a court of record and, as such, there is no basis in the record for HANO to seek to terminate a lease agreement between Ms. Haynes and the management of Guste Homes.

. By definition, a "guest” is someone who “is entertained or to whom hospitality is extended, Blacks's Law Dictionary, 8th Ed. (West 2004), p. 736, and "control” indicates exercising "power or influence” over the person, Black's Law Dictionary, 8th ed. (West 2004), p. 353.

. Moreover, as HANO is presumably the entity responsible for the federal funds pertinent to public housing, it is surely responsible for insuring that such public housing is administered according to federal regulations and policies. In this case, there is no indication that the "property manager” for Guste Homes had been trained regarding the pertinent statutes and regulations or even understood the plain language of the statutes and regulations.

. In oral argument it was indicated that the incident took place in St. Charles Parish.