**BARRY BERNADAS C/O**　　*　　NO. 2022-CA-0758
**BELLA ZOYA PROPERTIES**

　　　　　　　　　　　　　　*

**VERSUS**　　　　　　　　　**COURT OF APPEAL**

　　　　　　　　　　　　　　*

**DONALD PALMER**　　　　　**FOURTH CIRCUIT**

　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　**STATE OF LOUISIANA**

　　　　　　* * * * * * *

APPEAL FROM
SECOND CITY COURT OF NEW ORLEANS
NO. 2022-01188, "D"
Honorable Nadine Ramsey
* * * * * *
**Judge Karen K. Herman**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Rachael D. Johnson, and Judge Karen K. Herman)

Michael J. Kasper
SOUTHEAST LOUISIANA LEGAL SERVICES
1340 Poydras Street, Suite 600
New Orleans, LA 70112

　　COUNSEL FOR DEFENDANT/APPELLANT

　　　　　　　　　　　　　　　　　　**REVERSED**
　　　　　　　　　　　　　　　　　　**APRIL 19, 2023**

This is an eviction proceeding. Appellant-Defendant, Donald Palmer, appeals the trial court's September 27, 2022 judgment, which granted the rule for possession filed by Appellee-Plaintiff, Barry Bernadas c/o Bella Zoya Properties, and ordered Appellant-Defendant to vacate the leased premises. For the following reasons, we reverse the judgment of eviction.

## FACTS AND PROCEDURAL HISTORY

Appellant-Defendant, Donald Palmer ("Palmer"), leased an apartment located at 4545 Macarthur Boulevard in New Orleans. Appellee-Plaintiff, Barry Bernadas c/o Bella Zoya Properties ("Bernadas"), is the owner/landlord of the property.

The apartment was leased through the Permanent Supportive Housing ("PSH") program, administered by the START Corporation. As a participant in said program, Palmer's rent is fully subsidized. According to Palmer, he also receives supportive services from the Assertive Community Treatment ("ACT") team, which provides mental health care to patients at their home as well as a housing specialist to assist the patients interacting with landlords to prevent conflict that may arise during the tenant's occupancy.

On September 20, 2022, Bernadas initiated eviction proceedings against Palmer in Second City Court, claiming that Palmer violated the terms of the lease because Palmer was "verbally abusive," "verbally attack[ed] women for no apparent reason," and "use[d] foul language and disrupts the building." The petition specifically alleged that on September 19, 2022, Palmer "verbally attac[k]ed the owner of the property" on two occasions. The rule for possession was tacked on Palmer's door on September 20, 2022, the same date as the filing thereof.

On September 27, 2022, Palmer filed his answer, affirmative defenses, and a dilatory exception of prematurity.[1] In the exception, Palmer argued that the lease agreement required a seven-day notice to cure any lease violation. He claimed that in the rule for possession, Bernadas alleged a lease violation occurred on September 19, 2022, and instead of providing the requisite notice and seven days to cure, he filed for eviction the following day.

The matter came for hearing before the trial court on September 27, 2022.[2] Prior to reaching the merits, the trial court addressed Palmer's exception of prematurity. Although the petition lists the date of only one incident, September 19, 2022, Bernadas claimed that there were several incidents that led to the filing

---

[1] In his answer, Palmer alleged that he was standing on his second floor balcony speaking with a neighbor while Bernadas was near the mailboxes and walked out and asked if Palmer was talking to him. Defendant claims that he told Plaintiff he was not talking to him but that Plaintiff "continued with the confrontation, stating 'I'm asking you again, are you talking to me?'" and Bernadas threatened Palmer with eviction. Palmer alleged that Bernadas is aware that he has severe mental illness and participates in PSH. Palmer also alleged that Bernadas is aware that Palmer is under the care of ACT and was in direct contact with the housing specialist, Charlene Ellis. Palmer asserted that despite knowing this alternative contact, Bernadas initiated the confrontation with Palmer.

[2] The trial court swore in Palmer and Bernadas at the start of the proceedings. Palmer was represented by counsel. Bernadas represented himself. Aside from placing his name on the record, Palmer did not provide testimony. The information relayed at the hearing was through argument by defense counsel.

of the eviction proceedings, including one that occurred on August 10, 2022, four from August 21, 2022, and two that occurred on September 19, 2022.

With regard to the September 19, 2022 incident(s), Bernadas stated that he was working on the mailboxes and speaking with a former tenant when Palmer approached and verbally attacked him. The transcript provides:

> -- he [Palmer] comes and verbally attacks me while I'm working on mailboxes because I was speaking with a former tenant who is not supposed to be there.
>
> So he decides to come down and rant and rave to me because as I was walking by I asked him, because he was talking, nobody else was around; I asked him if he was speaking to me. The next thing you know I'm [sic] verbally barraged. You know, it's just incredible.
>
> Then he decides to come down from his apartment, get in my face. It wasn't until another person walked up that I don't know but was visiting a tenant; he stood behind me because of what was – I'm guessing it was because of what was going on with him. And then when he realizes that he leaves and goes back up to his apartment and starts up again. It's just – it's incredible. And you know I mean it's a very dangerous situation now.

Bernadas also stated that on another occasion Palmer "attacked" a woman in the building. Bernadas alleged that the woman had walked by Palmer's door and Palmer came out and starting "yelling at her, calling her a 'hoe' and a prostitute.'" Bernadas further claimed that the woman involved did not come to court because she was "petrified."

Video of the alleged incidents were contained on Bernadas's phone. The trial court took a brief recess to review the videos in chambers. After the recess, the trial court denied the exception of prematurity.

Defense counsel objected to the introduction of the videos. He claimed that the first five videos (presumably those taken August 10 and 21, 2022) constituted hearsay because Bernadas was not a witness to them and did not call a witness to

authenticate and introduce the videos. As to the videos taken on September 19, 2022, defense counsel maintained that those were improper for lack of authentication. The trial court overruled the objections.

Defense counsel then made arguments similar to those set forth in the answer to the petition. Defense counsel noted that Palmer and Bernadas participate in the PSH program. He also alleged that Bernadas was aware that Palmer was mentally ill, was under the care of ACT, and had texted with Defendant's housing specialist subsequent to the September 19, 2022 incident. Defense counsel also indicated that Bernadas "continued the confrontation with Mr. Palmer and even raised his voice." Defense counsel further claimed that the videos offered by Bernadas do not capture the entire incident.

The trial court, after considering the arguments and the evidence presented, granted the rule for possession, stating "I've looked at the videos, I've read the briefs and I think the eviction is good." The trial court then ordered Palmer vacate the property by October 6, 2022.

Palmer thereafter filed a suspensive appeal. After the record was lodged with this Court, Palmer moved to convert his suspensive appeal to a devolutive appeal.

## DISCUSSION

### *Motion to Convert Suspensive Appeal to Devolutive Appeal*

In his motion, Palmer seeks to convert the suspensive appeal to a devolutive one because possession of the leased premises has been restored. He claims that despite taking a suspensive appeal, he vacated the property to avoid harassment from Bernadas and, at his case worker's suggestion, that he move for his mental health. Palmer alleges he does not want to abandon his appeal and that he retains a

4

stake in clearing the eviction from his records. Palmer also argues that the appeal is not moot because he still has a need for relief.

An appellate court effectively lacks jurisdiction when all the legal controversies arising from the judgment become moot as there is no subject matter on which the judgment can operate. *Fid. Bank v. Succession of Dowden*, 2020-0241, p. 6 (La. App. 4 Cir. 10/7/20), --- So.3d ----, ----, 2020 WL 5939215 *3 (citing *Allums v. Allums,* 2017-0021, p. 3 (La. App. 4 Cir. 5/31/17), 221 So.3d 191, 193). "The justiciable controversy must normally exist at every stage of a proceeding, including the appellate stage." *Id.*; *see also Cat's Meow, Inc. v. City of New Orleans Through Department of Finance*, 1998–0601, p. 9 (La. 10/20/98), 720 So.2d 1186, 1193.

"[A]n issue is 'moot' when a judgment or decree on that issue has been 'deprived of practical significance' or 'made abstract or purely academic.'" *Edward v. Badie*, 2019-0332, p. 2 (La. App. 4 Cir. 8/28/19), 282 So.3d 269, 270–71 (quoting *Cat's Meow, Inc.,* 1998-0601, p. 8, 720 So.2d at 1193). "A case is 'moot' when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect." *Id.*

Palmer claims that he will be impacted by an eviction on his record. He argues that it is difficult to find rental housing with a PSH voucher and with an eviction on his record, he will be confined to substandard housing. He cites a few law review articles in support of his argument, including Davida Finger, *The Eviction Geography of New Orleans: An Empirical Study to Further Housing Justice*, 22 U.D.C. L. REV. 23, 41 (Spring 2019), which stated, in part:

> Screening companies can locate information such as eviction records, and property owners routinely discriminate against tenants

with an eviction on their record. Tenants with eviction records are thus forced into less desirable housing options.

Palmer's argument has merit. While Palmer will not have monetary damages for a wrongful eviction, because the eviction will be on his record and he relies on housing vouchers to lease an apartment, it is likely that he will be discriminated against in finding housing in the future. As such, addressing the merits of the eviction in this case will serve a useful purpose. Accordingly, we find that the matter is not moot and grant the motion to convert the suspensive appeal to a devolutive appeal.

***Merits***

Standard of Review

This Court in *JoAnn Place v. Ricard*, 2022-0456, pp. 10-11 (La. App. 4 Cir. 12/27/22), 356 So.3d 518, 526, set forth the standard of review in eviction proceedings as follows:

> In an eviction proceeding, the appellate court reviews the trial court's factual findings for manifest error. *235 Holdings, LLC v. 235 Enters., LLC*, 2020-0658, p. 5 (La. App. 4 Cir. 12/15/21), 334 So.3d 862, 866 (citing *Armstrong Airport Concessions v. K-Squared Rest., LLC*, 2015-0375, p. 9 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100). Under this standard of review, an appellate court "must ... find from the record that there is a reasonable factual basis for the [trial] court's findings of fact[,]" and "the record must establish that the [trial] court's findings are not manifestly erroneous or clearly wrong." *Guste Homes Resident Mgmt. Corp. v. Thomas,* 2020-0110, p. 8 (La. App. 4 Cir. 7/29/20), 302 So.3d 1181, 1187 (citing *Mazzini v. Strathman,* 2013-0555, p. 4 (La. App. 4 Cir. 4/16/14), 140 So.3d 253, 256). "Factual findings should not be reversed on appeal absent manifest error." *Id*. (quoting *Mazzini*, 2013-0555, p. 4, 140 So.3d at 256). "Where legal errors of the trial court have tainted the fact finding process" though, "the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a *de novo* review of the record and determine the preponderance of the evidence." *Id*. at pp. 8-9, 302 So.3d at 1187 (quoting *Hous. Auth. of New Orleans v. King*, 2012-1372, p. 5 (La. App. 4 Cir. 6/12/13), 119 So.3d 839, 842).

The appellate court also reviews an eviction matter *de novo* if the appeal presents a purely legal question. *235 Holdings, LLC*, p. 5, 334 So.3d at 867 (citing *Armstrong*, 2015-0375, p. 9, 178 So.3d at 1101). Additionally, in an eviction proceeding, "when there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is *de novo*." *Affordable Care, LLC v. Martin*, 54,286, p. 14 (La. App. 2 Cir. 4/13/22), 337 So.3d 615, 623 (citing *Armstrong*, 2015-0375, pp. 9-10, 178 So.3d at 1101).

"The lessor has the burden of proving, by a preponderance of the evidence, a valid lease and that the violation of the lease provides sufficient grounds for an eviction." *200 Carondelet v. Bickham*, 2017-0328, pp. 4-5 (La. App. 4 Cir. 10/25/17), 316 So.3d 955, 959 (citing *Guste Homes Resident Mgmt. Corp. v. Thomas*, 2012-0386, p. 8 (La. App. 4 Cir. 5/29/13), 116 So.3d 987, 991). "A judgment of eviction must be reversed when the lessor fails to prove the legal ground upon which the lessee should be evicted." *Hous. Auth. of New Orleans v. Haynes,* 2014-1349 (La. App. 4 Cir. 5/13/15), 172 So.3d 91, 99 (quoting *Hous. Auth. of New Orleans v. King*, 2012–1372, p. 4 (La. App. 4 Cir. 6/12/13), 119 So.3d 839, 842).

Palmer argues that the trial court erred in granting the eviction because in doing so it relied on unauthenticated hearsay evidence and because Bernadas failed to establish that a violation of lease continued seven days from the notice of noncompliance.

"[S]uperimposed on [Louisiana's eviction] procedures are the rules of evidence contained primarily in the Louisiana Code of Evidence. No 'relaxed' or simplified rules of evidence apply to eviction proceedings." *JoAnn Place,* 2022-0456, p. 12, 356 So.3d at 527 (quoting *Housing Auth. of New Orleans v. Haynes,* 2014-1349, p. 24 (La. App. 4 Cir. 5/13/15), 172 So.3d 91, 104 (Tobias, J., concurring)).

"'Authentication' is a process whereby something is shown to be what it purports to be." *Carrie v. Jones*, 2021-0659, p. 6 (La. App. 4 Cir. 1/21/22), 334 So. 3d 834, 841 (quoting *State v. Coleman,* 2012-1408, p. 22 (La. App. 4 Cir. 1/8/14), 133 So.3d 9, 25). "Authentication of evidence is required in order for evidence to be admissible at trial." *Archaga v. Johnson*, 2019-85, p. 12 (La. App. 5 Cir. 10/16/19), 280 So.3d 331, 340.

Regarding authentication, the Louisiana Code of Evidence states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Jones v. Boot Bar & Grill,* 2022-0154, pp. 20-21 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 983, *writ denied*, 2022-01639 (La. 1/18/23), 353 So.3d 728 (quoting La. C.E. art. 901(A)). "La. C.E. art. 901(B) provides an illustrative, though not exhaustive, list of examples of authentication or identification of evidence." *Carrie*, 2021-0659, p. 7, 334 So.3d at 841. Such evidence may come in the form of "[t]estimony by a witness with knowledge" that the "matter is what it is claimed to be;" indications of the item's distinctive characteristics, including its "contents, substance, internal patterns, and other distinctive characteristics;" or "[e]vidence describing the process or system used to produce the item and showing that the process or system produces an accurate result." *See* La. C.E. art. 901(B)(1),(4),(9).

"Because authentication of evidence is a condition precedent to admissibility, an exhibit that is not authenticated does not constitute competent evidence." *Knoten v. Westbrook*, 2014-0892, p. 6 (La. App. 4 Cir. 5/18/16), 193

So.3d 380, 385 (quoting *Price v. Roy O. Martin Lumber Co.*, 2004–0227, p. 8 (La. App. 1 Cir. 4/27/05), 915 So.2d 816, 822).

Here, the evidence Bernadas relied on to establish that Palmer violated the terms of his lease agreement were several videos stored on Bernadas's phone. The videos were not officially offered into evidence at the hearing and are not contained in the record for appeal.[3] Moreover, the videos were not properly authenticated and thus are inadmissible.[4]

The videos of the August 10 and August 21, 2022, incidents that allegedly depicted interactions between Palmer and a neighbor were not witnessed by Bernadas. Bernadas did not call any witnesses to verify that the videos were in fact what he had purported them to be or to testify about the alleged incidents. As such, we find that Bernadas failed to lay the proper foundation required to authenticate and admit the August videos into evidence.

Regarding the September 19, 2022 incident, the record provides that Bernadas did have personal knowledge of the events contained in the video. However, he did not identify the video as surveillance footage or demonstrate how the information is stored or otherwise authenticate the video. *See Roberts v. Boxer,* 2019-1038, pp. 8-9 (La. App. 4 Cir. 11/18/20), 311 So.3d 513, 519–20 (finding that body camera footage obtained from a police officer who responded to a car accident was sufficiently authenticated where the motorist identified herself at the scene on the day of the accident, the officer who responded, and the vehicles

---

[3] The only exhibit actually admitted at the hearing was a copy of the lease agreement. The videos were not included on the exhibit list.

[4] Presumably, Plaintiff offered the video evidence to establish what Defendant said. Nevertheless, we need not reach whether the videos constitute hearsay because the evidence was not properly authenticated.

involved in the accident, and the footage was corroborated by additional photographs); *State v. Rice*, 2017-0446, pp. 2-3 (La. 6/29/17), 222 So.3d 32, 33-34 (finding that the surveillance video was sufficiently authenticated to support its admission at a hearing where owner of surveillance system that captured video, who lived across the street from the defendant, testified that he had personally designed and managed the system and knew video at issue to be what it was asserted to be, and he also described the process and system by which the video was created and testified to the accuracy of that system); *but see State ex rel. J.H.*, 2022-0324, pp. 12-13 (La. App. 4 Cir. 8/9/22) --- So.3d ----, ----, 2022 WL 3210100 at *6, *as clarified on reh'g* (8/19/22) (finding that the trial court erred in admitting video footage and failed to lay proper foundation for authentication of the video where the State offered no testimony from a person who maintained the surveillance video system that recorded the video, and the chain of custody was not established because the officer received the footage from a non-testifying third party).

In *King*, 2012-1372, 119 So.3d 839, this Court held it was legal error for the trial court to rely on evidence in an eviction proceeding that was neither authenticated nor introduced at trial. In *King*, HANO filed a rule for possession seeking to evict a public housing tenant for criminal activity, a violation of the lease agreement. No evidence was offered by HANO at the eviction proceeding; only argument of counsel. The record on appeal, however, included the lease agreement and police report that lead to the tenant's arrest. The *King* Court noted while neither item was introduced at trial, the trial court relied on the police report in evicting the tenant. This Court stated, in part:

10

Despite the fact that the police report was not properly authenticated or introduced into evidence, the transcript of the eviction trial shows that the trial court relied on it in her decision to order the eviction of Ms. King. It was legal error for the trial court to do so.

*King*, 2012-1372, p. 5, 119 So.3d at 842. The *King* Court therefore reversed the judgment of eviction.

Similarly, in the present case, the videos offered by Bernadas to establish Palmer violated the lease were neither introduced into evidence nor properly authenticated. As such, it was error for the trial court to rely on the videos in evicting Palmer from the premises.

However, Bernadas did provide testimony regarding the September 19, 2022 incident. Thus, arguably the trial court could have relied on Bernadas's statements as grounds for evicting Palmer. Nevertheless, with only the September 19, 2022 incident to consider, Bernadas did not give Palmer the requisite seven-day notice to terminate the lease as required under the agreement.

Paragraph 20 of the lease provides:

DEFAULT. *If Tenant fails to comply with any of the material provisions of this Agreement, other than the covenant to pay rent, or of any present rules and regulations or any that may be hereafter prescribed by Landlord, or materially fails to comply with any duties imposed on Tenant by statute, within seven (7) days after delivery of verbal or written notice by Landlord specifying the non-compliance and indicating the intention of Landlord to terminate the Lease by reason thereof, Landlord may terminate this Agreement.* If Tenant fails to pay rent when due and the default continues for seven (7) days thereafter, Landlord may, at Landlord's option, declare the entire balance of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to Landlord at law or in equity or may immediately terminate this Agreement. [Emphasis added].

Palmer claims that the lease required that the lessor orally or in writing provide a seven-day notice to cure the violation before placing the lessee in default and that Bernadas failed to provide this notice.

Paragraph 20 of the lease does contain a cure provision. However, the cure is only in reference to the failure of the tenant to pay rent. Here, the eviction proceedings were not initiated for Palmer's failure to pay rent. The rule for possession was filed for violating the terms of the lease, specifically, the fact that Palmer was verbally abusive, used foul language, and disrupted the building. For a default for failure to comply with the lease provisions other than nonpayment of rent, Paragraph 20 of the lease does not mandate a seven day curing period to stop violating the lease. It does, however, require that the landlord provide notice to the tenant seven days before terminating the lease.

At the hearing, Bernadas indicated that he gave verbal notification to terminate the lease. However, the record does not indicate a specific date on which notification was provided to Palmer. Moreover, the only admissible evidence regarding Palmer's alleged breach of the lease agreement occurred on September 19, 2022, and the eviction proceedings were filed the following day, September 20, 2022. As such, we find that Bernadas did not provide Palmer seven-day notice pursuant to the lease agreement prior to termination. Accordingly, we find that the trial court erred in evicting Palmer.

## CONCLUSION

The trial court erred in finding Palmer violated the lease and rendering a judgment of eviction based on inadmissible evidence. Moreover, Bernadas failed to prove that he gave Palmer the requisite seven days' notice prior to terminating the lease regarding the September 19, 2022 incident. Accordingly, for these and the above-stated reasons, the trial court's September 27, 2022 judgment is reversed.

**REVERSED**

12